UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                                DECISION AND ORDER
        v.                                      03-CR-055A

HAROLD KLUMP,

                Defendant.

---

## BACKGROUND

On February 26, 2003, a four-count indictment was returned against the defendant, Harold Klump, charging him with violating federal narcotics laws, possessing a firearm in furtherance of that activity, and being a felon in possession of a weapon. The indictment arose out of a search of the defendant's warehouse located at 900 Genesee Street in Buffalo, New York.

On April 18, 2004, the defendant filed a motion to dismiss the indictment and to suppress evidence found at the warehouse. The matter was referred to Magistrate Judge Hugh B. Scott, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).

1

On October 17, 2003, Magistrate Judge Scott held a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). The government called four witnesses at the hearing: DEA Agent Cory Higgins, DEA Agent Dale Kasprzyk, Buffalo Police Officer William Donovan, and Buffalo Fire Department Chief William Cunningham. The defendant did not call any witnesses.

Agent Kasprzyk testified that he was part of a team conducting surveillance of a warehouse located at 900 Genesee Street in Buffalo, New York, on October 22, 2002. At approximately 2:30 p.m., he and another agent smelled smoke emanating from the warehouse. At that time, other agents were already in the process of requesting a search warrant for that premises. Kasprzyk called the Buffalo Fire Department. Upon arrival, Kasprzyk advised Buffalo Fire Chief William Cunningham that they were in the midst of a narcotics investigation when they smelled smoke. Kasprzyk told Chief Cunningham to do whatever he felt was appropriate in terms of an investigation. Kasprzyk saw Cunningham and his firefighters circle the perimeter of the warehouse. Cunningham then determined that it was necessary to enter the building. However, the agents could hear dogs barking inside. At that point, an associate of the defendant who was also

present at the scene, Jeremy Page, offered assistance in controlling the dogs (two pit bulls). Once the dogs were secured, the firefighters and agents entered the building simultaneously.

The firefighters investigated the entire building and the agents escorted them. The agents expressed concern for the firefighters' safety as the premises was involved in an active narcotics investigation. During the course of the fire investigation, a large number of marijuana plants were discovered. The firefighters finished their investigation, determined that no fire was present, and exited the building with the agents. The agents secured the building and left its contents undisturbed. Kasprzyk then transmitted the information about the fire and the marijuana plants to the agents who were seeking the search warrant.

Officer Donovan testified that he was assigned to the DEA Task Force on October 22, 2002, and was involved in the investigation of 900 Genesee Street. He was standing near Kasprzyk in front of the warehouse at approximately 2:30 p.m. when he also smelled smoke. The Buffalo Fire Department was called and arrived almost immediately. Donovan entered the building with the firefighters to ensure their safety. Upon entering the building, he observed a firearm and "shake marijuana" in plain view on the

first floor. The firefighters ultimately determined that there was no fire. He exited the warehouse with the firefighters. He and another agent then spoke to Jeremy Page, who suggested that the source of the smoke was likely a furnace that he (Page) had just recently lit. Page advised that the furnace was new and the smell could be burning oil from the furnace.

Chief Cunningham testified that he received a call to 900 Genesee Street on October 22, 2002, at approximately 2:30 p.m. Upon arriving, Chief Cunningham could smell "the definite odor of something, . . . it smelled like something was burning." Tr. at 51. He began conducting an exterior examination of the warehouse. Cunningham was advised that agents were conducting surveillance of the warehouse and awaiting a search warrant when a burning odor was detected. Chief Cunningham believed that the burning odor was coming from the top of the warehouse, but was not certain. He did not observe any smoke or flames. Chief Cunningham made a decision to enter the building to investigate the fire. Cunningham found no smoke or fire on any of the floors, but he did see a large industrial-sized exhaust fan on the top floor and speculated that the fan may have been pulling the burning odor out of the building.

On February 10, 2004, Magistrate Judge Scott issued a report and recommendation, recommending that the motion to suppress be denied. The Magistrate Judge found Buffalo Fire Chief Cunningham's testimony that he smelled a burning odor coming from the warehouse to be credible and supported by the credible testimony of Special Agent Dale Kasprzyk and Buffalo Police Officer William Donovan. Based upon the evidence at the hearing, the Magistrate Judge concluded that the firefighters reasonably believed that it was necessary to enter the warehouse to investigate the source of the burning odor. The Magistrate Judge also found that such an entry by firefighters to investigate a possible fire did not require a search warrant. <u>See</u> Report and Recommendation, Dkt. No. 48, at 6 (citing <u>Michigan v. Tyler</u>, 436 U.S. 499 (1978)). The Magistrate Judge found that the exigent circumstances also made it permissible for the police to enter the warehouse to assist the firefighters.

The defendant filed objections to the Report and Recommendation and attached a transcript of the suppression hearing. The government opposed the defendant's objections. On May 24, 2004, after conducting a <u>de novo</u> review of the Report and Recommendation, the parties submissions, and the transcript of the suppression hearing, the

Court issued an order adopting the Report and Recommendation and denying the defendant's motion to suppress.

On August 2, 2004, the defendant filed a *pro se* motion for reconsideration of this Court's May 24th Order. On August 6, 2004, the Court denied the motion for reconsideration without prejudice to the right of the defendant's counsel to bring the motion on the defendant's behalf. The defendant's counsel did not do so.

The matter proceeded to trial and on August 10, 2004, the jury returned a verdict of guilty as to Counts I, II and III of the indictment.[1]

On September 7, 2004, the defendant filed a motion to relieve his counsel, citing primarily counsel's failure to make the motion for reconsideration. On May 12, 2005, the Court granted the defendant's motion to relieve counsel and appointed attorney Robert Convissar, Esq., to represent the defendant for the duration of the proceedings. The Court also granted the defendant permission to re-file his motion for reconsideration of the suppression order. The government filed a response and oral argument was heard on June 9, 2005. Following oral argument, the defendant provided the Court with additional submissions.

---

[1] The jury did not consider the felon in possession count. That count was dismissed by the government after the jury returned its verdict as to Counts I, II and III.

**DISCUSSION**

In his motion for reconsideration, the defendant asserts that he has "newly discovered evidence" that would discredit Chief Cunningham's testimony. The "evidence" cited in the defendant's motion is neither newly-discovered nor probative of Chief Cunningham's credibility.

The defendant argues that at trial, witness James Lunge testified that he told the police that he accessed the warehouse via a garage door opener and gave it to the police. According to the defendant, this testimony demonstrates the officers' intent to enter the building without a warrant. The Court does not agree. In fact, the undisputed evidence showed that the agents were already seeking a search warrant at the time that they first observed the burning odor.

Next, the defendant argues that the fact that no fire was ultimately discovered supports the conclusion that the Buffalo Police, the DEA agents and Fire Chief Cunningham all fabricated the "burning odor" story. This argument was raised by defendant's attorney during the original suppression hearing, was considered by the Magistrate Judge and this Court upon de novo review of his objections, and was rejected. The fact that no fire was discovered does not render the "burning odor" testimony

false. Indeed, during his testimony, Chief Cunningham explained that on "many occasions" he has answered a fire call and smelled a burning odor, but ultimately no fire was found. See Tr. at 57. He has also answered many calls where only a burning odor was detected, without smoke, and a major fire was found. Id.

      Cunningham also testified that as he was standing outside the warehouse, he believed that the burning smell was emanating from the roof. Cunningham testified that a large industrial-sized fan was later discovered on the top floor of the warehouse, which he believed was pulling the odor out of the building and onto the roof. See Tr. at 55. The defendant argues that one or more pictures taken at the scene and presented at trial showed that the fan was off, thereby rendering Cunningham's testimony untruthful. Assuming, arguendo, that the defendant is correct and that the fan was off, it does not render Chief Cunningham's testimony untruthful. Rather, it simply renders his determination as to the source of the odor incorrect.

      In fact, after it was discovered that there was no fire, Officer Donovan spoke to Jeremy Page, who suggested that the source of the burning smell could be a furnace that he (Page) had lit shortly before he left the warehouse. See Tr. 37-38.

Defendant also points to testimony indicating that approximately 20 to 30 minutes elapsed between the time that the odor was first detected to the time that the firefighters actually entered the warehouse. The defendant argues that if a fire were imminent, the firefighters would not have waited so long. The evidence showed that the delay resulted from the fact that two pit bull dogs had to be removed before entering the premises. Under those circumstances, it was certainly reasonable for the firefighters to ensure their safety by waiting until the pit bulls were secured before entering the warehouse.

Finally, the defendant disputes the testimony of Cunningham that the doors were unlocked at the time they entered. The defendant states that he locked those doors himself. If that is true, the defendant had the opportunity to raise this issue during the initial suppression hearing, but failed to do so. Nor did he raise it in his objections to the Report and Recommendation. Under these circumstances, the Court will not consider such an argument at this late date.

**CONCLUSION**

In sum, nothing in the defendant's motion for reconsideration provides a basis for altering the Court's initial suppression ruling. Accordingly, the defendant's motion for reconsideration is denied.

IT IS SO ORDERED.

/s/ Richard J. Arcara
_____
HONORABLE. RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

Dated: July   19   , 2005